UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MOISES JOSUE CORTEZ,<br>Plaintiff,<br>v.<br>BRANDON STUBBS, *et al.*,<br>Defendants. | Case No. 3:21-cv-00316-ART-CLB<br>ORDER |

Plaintiff Moises Josue Cortez sued Defendants Shane Brown, Jesse Cox, Christopher Davis, David Drummond, Jose Guzman, Sean Johnson, Macelen Kleer, Chet Rigney, William Reubart, Angela Searle, Brandon Stubbs, and James Weiland alleging violations of his civil rights while he was incarcerated at Ely State Prison ("ESP"). (ECF No. 4.) Before the Court is Magistrate Judge Carla Baldwin's Report and Recommendation ("R&R") recommending that Defendants' motion for summary judgment (ECF No. 114) be granted and denied in part, and that Cortez's motion for summary judgment and motion to strike (ECF Nos. 115; 119) be denied. (ECF No. 131.)

For the reasons set forth below, the Court adopts Judge Baldwin's R&R, granting and denying Defendants' motion for summary judgment and denying Cortez's motion for summary judgment and motion to strike.

## I. FACTS AND PROCEDURAL HISTORY

The Court adopts the following facts from the R&R. On January 29, 2021, several inmates assaulted a correctional officer at Warm Springs Correctional Center. (ECF No. 131 at 3.) Cortez was alleged to be the initial aggressor of the assault. (*Id.*) Consequently, Cortez and other inmates were immediately transferred to ESP, and arrived there at roughly 2:10 a.m. on January 30, 2021. (*Id.*) The parties present diverging narratives about what happened when Cortez

arrived at ESP.

Upon arriving at ESP, Cortez alleges that Weiland and Guzman opened the door of the transport van and asked Cortez what his name was. (*Id.*) When Cortez identified himself, the pair looked at each other and Guzman said, "that's him." (*Id.*) Weiland then ordered Cortez to exit the van, and both officials escorted him to a holding cell. (*Id.* at 4.) Cortez was told to strip naked for a search. (*Id.*) Brown and Cox, at this point, had entered the cell, and Reubart and Stubbs were standing just outside. (*Id.*) Brown then ordered Cortez to look at the ceiling, and Guzman punched Cortez multiple times in the face. (*Id.*) Weiland subsequently struck Cortez in the face and chest several times. (*Id.*) Cortez then alleges that he fell to the ground and was tazed, kicked, and hit, although he does not identify which Defendant perpetrated these acts. (*Id.*)

Cortez passed out during the incident, and when he regained consciousness, he heard panicked voices saying, "you did too much, wake him up." (*Id.*) Clothes were put on his body, and he felt extreme pain in his face, back, and chest. (*Id.*) Guzman, Weiland, and Brown then strapped Cortez to a chair, and he was examined by two medical personnel. (*Id.*) Cortez informed the medical personnel that he had just been assaulted, needed immediate medical care, and asked them to document his injuries. (*Id.*) Neither of the medical personnel made any attempt to document his injuries. (*Id.*)

Defendants present a sharply contrasting version of events. Internally generated incident reports provided by Defendants state that after Cortez was placed in the holding cell, Weiland and Stubbs warned him to follow all instructions given during the unclothed search. (*Id.*) Stubbs specifically warned Cortez that "any move towards officers will be taken as an act of aggression." (*Id.*)

Reports diverge slightly about what occurred during the search. Guzman, Weiland, Brown, and Stubbs reported that Cortez became aggressive with officers during the search. (*Id.*) Guzman, Weiland, and Brown specifically reported that

Cortez attempted to hit an officer. (*Id.*) Cox, on the other hand, reported that Cortez only became aggressive, approaching Weiland "with closed fists," after the search concluded. (*Id.*) In any event, after Cortez became aggressive, officers took him to the ground. (*Id.*) When Guzman, Weiland, and Brown attempted to gain control of Cortez, he resisted. (*Id.*)

Guzman reported he had to give Cortez "3 department approved closed fist strikes to [Cortez's] right side to gain compliance." (*Id.*) Stubbs reported that he had to deliver a five second "drive stun" with his taser to Cortez's "lower back/hip." (*Id.* at 4–5.) The officers then placed Cortez in a soft restraint chair and medical personnel evaluated him. (*Id.* at 5.) Cortez's medical records contain no notations regarding this evaluation. (*Id.*) No one disputes that Cortez was then transferred to his cell without issue. (*Id.*)

That day, Weiland formally charged Cortez with battery related to the incident. (*Id.*) Cortez later appeared in front of disciplinary committee, of which Guzman was a member, and pleaded not guilty. (*Id.*) At the hearing, Cortez stated that, "I already have a grievance related to this write-up. The whole write-up's a lie. That's the only statement I wanna make." (*Id.*) The committee found Cortez guilty. (*Id.*)

On February 5, 2021, Cortez submitted a kite to medical stating his left eye was swollen, his vision was blurred, and he had pain in the back of his head, making it difficult for him to sleep. (*Id.*) There is no response noted on Cortez's kite, however, he was seen by medical on February 16. (*Id.*) The visit, notably, was an audio-only telehealth visit. (*Id.*) The progress notes are difficult to read, but indicate that Cortez was in pain and had a contusion near his mandible and temporomandibular joint ("TMJ"). (*Id.*) Cortez was prescribed Naprosyn—prescription strength Naproxen—and an Ibuprofen pain pack. (*Id.*)

On March 25, 2021, Cortez submitted a kite to medical asking to be scheduled for an x-ray. (*Id.*) He stated that he still had "feelings" on the left side

of his face, that were not there before the assault, and that his left eye still bruised and itched. (*Id.*) On March 30, medical staff responded that Cortez would be scheduled to see a provider. (*Id.*) Cortez's medical records show that, on April 1 at 11:50, an APRN ordered Cortez be scheduled to see a provider. (*Id.*) Fifteen minutes later, another staff member wrote "noted." (*Id.*) Neither entry, however, reflects when Cortez's appointment was scheduled for, and Cortez's progress notes do not reflect any visit in April 2021. (*Id.* at 5–6.)

On April 12, 2021, Cortez submitted another medical kite stating that he was scheduled for an appointment on April 9, and that his neighbors told him a nurse was looking for him. (*Id.* at 6.) Cortez stated that he was in the recreation yard, and that he asked the unit officer if what his neighbors told him was true. (*Id.*) The officer told Cortez that it was true, and that the nurse wanted him to sign a refusal. (*Id.*) It is unclear whether this conversation occurred on April 12, the day he submitted the kite, or on April 9, the day he had an appointment. (*Id.*) Either way, Cortez stated he never spoke to a nurse about a refusal, and that any refusal was without his consent. (*Id.*) Cortez asked for the appointment to be rescheduled, and an APRN responded that he was scheduled to see a provider. (*Id.*)

On June 7, 2021, Cortez was seen at sick call complaining of jaw pain related to the January 30th incident. (*Id.*) The provider noted Cortez had mild TMJ dysfunction on his left side, but that his range of motion remained intact. (*Id.*) The provider noted there were no structural defects or facial dissymmetry. (*Id.*) Cortez was offered a "Mechanical Soft Diet" for the pain, but he declined. (*Id.*) He was prescribed more Naprosyn, and the provider referred Cortez to dental for his jaw pain, ordered an eye exam for the blurred vision, and ordered an x-ray of the left side of Cortez's jaw. (*Id.*) The order for an x-ray was approved on June 16. (*Id.*)

On June 22, 2021, and June 28, 2021, Cortez submitted kites to medical

inquiring about the status of his x-ray. (*Id.*) On June 29, he was told his x-ray, dental referral, eye exam, and medication had all been ordered. (*Id.*) Cortez submitted several more kites over the next few months noting his jaw pain and requesting an update on his x-ray appointment. (*Id.*) Medical staff responded to each kite, noting that they were still waiting for an appointment to be set, and asking Cortez to be patient. (*Id.* at 6–7.)

On November 22, 2021, Cortez was taken to the hospital to have his jaw x-rayed. (*Id.* at 7.) The radiology report noting the following findings: "No plain film evidence for fracture or dislocation identified. There is aeration of the sinuses. The sphenoid ridge appears anatomic. Mild degenerative changes are seen in the upper cervical spine." (*Id.*) On December 2, Cortez was informed that the x-ray identified no fracture or dislocation. (*Id.*) On December 5, Cortez submitted another kite asking why he still had pain if there was no fracture or dislocation. (*Id.*) Staff responded that he had been scheduled for a visit, but there is no evidence in the record that Cortez was actually seen. (*Id.*)

On July 23, 2021, Cortez filed this lawsuit. (ECF No. 1-1.) The court screened his complaint and allowed him to proceed on three theories of liability: (1) Weiland, Guzman, Johnson, and two John Does used excessive force by assaulting Cortez in violation of the Eighth Amendment; (2) Searle, two Jane Does, and John Doe were deliberately indifferent to Cortez's serious medical need in violation of the Eighth Amendment; and (3) Weiland and Stubbs retaliated against Cortez in violation of the First Amendment. (ECF No. 3.)

After discovery began, the Court permitted Cortez to amend his complaint to add the names of additional defendants. (ECF No. 32.) Cortez's amended complaint alleges that: (1) Weiland, Guzman, Brown, Cox, Reubart, and Stubbs used excessive force against Cortez in violation of the Eighth Amendment; (2) Rigney, Searle, Johnson, Kleer, Guzman, Weiland, Brown, Cox, Stubbs, Reubart, Drummond, and Davis were deliberately indifferent to Cortez's serious medical

needs;[1] and (3) Weiland and Stubbs retaliated against Cortez in violation of the First Amendment. (ECF No. 33.)

Defendants subsequently moved for summary judgment, which Cortez opposed. (ECF Nos. 66; 84.) Judge Baldwin recommended that Defendants' motion be denied, and the Court agreed and denied Defendants' motion. (ECF Nos. 95; 98.) Defendants subsequently appealed, and the Ninth Circuit reversed the denial of summary judgment and remanded the case for further proceedings. (ECF Nos. 99; 106; 107.) The parties were then permitted to submit new motions for summary judgment. Defendants submitted a motion for summary judgment arguing the undisputed evidence shows that no constitutional violation occurred, or in the alternative, they did not personally participate in it. (ECF No. 114 at 6–22.) Defendants also argue that they are entitled to qualified immunity. (*Id.*) Cortez submitted a motion for summary judgment arguing that he is entitled to summary judgment because undisputed evidence establishes that Defendants' actions were malicious and sadistic. (ECF No. 115.) He also seeks to strike Defendants' affirmative defenses of qualified immunity, failure to exhaust, and good faith.[2] (*Id.*)

Judge Baldwin concluded that summary judgment should be granted for

[1] Cortez's complaint also alleges that Douglas Edwards and Tanisha Henry were deliberately indifferent to his serious medical needs. (ECF No. 33 at 8-9.) Cortez was unable to serve these defendants and they were subsequently dismissed from the litigation. (ECF Nos. 41; 43; 79.) John Doe 1 and John Doe 2 were also listed as defendants; however, Cortez never identified those Doe defendants. (ECF No. 33 at 9.) As a result, the Court dismisses them.

[2] Although Cortez styles his motion as a motion to strike, he does not cite Fed. R. Civ. P. 12(f) or the legal standard governing motions to strike. (ECF No. 115.) Instead, he argues that Defendants' affirmative defenses fail as a matter of law, which seems to be an attempt to argue that he is entitled to summary judgment on Defendants' affirmative defenses. (*Id.* at 19–25.) Additionally, Rule 12(f) provides that a party may move to strike a defense "within 21 days after being served with the pleading," making any motion to strike untimely. Fed. R. Civ. P. 12(f). Accordingly, the Court construes Cortez's motion strike as an extension of his larger summary judgment argument.

Defendants on Cortez's serious medical need claim and retaliation claim because he did not adduce sufficient adduce showing, respectively, that named Defendants personally participated in the alleged deliberate indifference or knew of the protected activity. (ECF No. 131.) Judge Baldwin also recommended that the Court deny summary judgment on Cortez's excessive force claim because there is a genuine dispute of material fact regarding whether Defendants used force reasonably or if they used force maliciously and sadistically to harm Cortez. (*Id.*)

## II. LEGAL STANDARD

### A. Review of Reports and Recommendations

Under the Federal Magistrates Act, a court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by [a] magistrate judge." 28 U.S.C. § 636(b)(1). Where a party objects to a magistrate judge's report and recommendation, the court is required to "make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1). A court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Defendants objected to the R&R. (ECF No. 132.) Therefore, the Court reviews the R&R *de novo* for issues Defendants objected to.

### B. Motion for Summary Judgment

Summary judgment is appropriate when the record shows "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* at 248.

In considering a motion for summary judgment, "all reasonable inferences

are drawn in the light most favorable to the non-moving party." *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). However, if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex*, 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

## II. ANALYSIS

### A. Constitutional Claims

#### 1. Serious Medical Need

Defendants argue that Cortez cannot establish that named Defendants were deliberately indifferent to a serious medical need because they had no ability to alter the medical care provided or reason to know that the medical care provided was inadequate. (ECF No. 114 at 19–22.) Judge Baldwin agreed with Defendants, finding that they did not personally participate and therefore could not have acted with deliberate indifference. (ECF No. 131 at 10–12.) Cortez did not object to this recommendation and the Court finds that Judge Baldwin did not clearly err. (*See* ECF No. 133.)

To maintain a claim under the Eighth Amendment for deliberate indifference to serious medical needs, a plaintiff must show: (1) a "serious medical need" by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain; and (2) that the defendant's response to the need was deliberately indifferent, which can be demonstrated by showing a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

The first element is an objective standard requiring the plaintiff to show that the deprivation was serious enough to amount to cruel and unusual

punishment. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The Ninth Circuit has identified three situations which indicate that a medical need is serious: (1) "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" (2) "the presence of a medical condition that significantly affects an individual's daily activities;" or (3) "the existence of chronic and substantial pain." *Colwell v. Bannister,* 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled in part on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)).

"A prison official is deliberately indifferent under the subjective element of the test only if the official knows of and disregards an excessive risk to inmate health and safety." *Colwell,* 763 F.3d at 1066 (citations and internal quotations omitted). Delay of, or interference with, medical treatment can amount to deliberate indifference. *Jett*, 439 F.3d at 1096; *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002). Where the prisoner is alleging that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury. *See Hallett*, 296 F.3d at 745–46; *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

Even assuming that Cortez suffered from a serious medical need, his claim fails under the subjective element because he cannot show that any of the named Defendants in this action knew of and disregarded an excessive risk to that need. In Cortez's amended complaint, he alleges that Nurse Henry and John Doe 1 failed to treat him after Defendants' use of force. (ECF No. 33 at 8–9.) He also alleges that John Doe 2 acted with deliberate indifference by failing to call medical after Cortez pushed the emergency button in his cell later that morning. (*Id.*) As the Court noted above, however, Cortez failed to serve Nurse Henry or identify the two John Does, and so they are not parties to this case.

Regarding the named Defendants, Cortez does not directly allege that any

of them were deliberately indifferent, and instead only alleges that Defendants were present when Nurse Henry and John Doe 1 refused to treat him. (*Id.*) Instead, undisputed evidence indicates that Defendants called medical personnel to evaluate Cortez before they took him to this cell. (ECF Nos. 114 at 20–22; 115 at 3, 52.) Accordingly, Defendants could not have acted with deliberate indifference because they immediately called medical personnel to evaluate Cortez.

Additionally, while Cortez alleges that he did not receive medical treatment and therefore suffered excruciating pain after the incident, there is no evidence that Defendants were involved in any lack of treatment. (ECF No. 33 at 10.) Cortez submitted numerous kites to medical regarding his pain, however, none of the Defendants are medical professionals, and there is no evidence to support that they processed, or had any knowledge of, Cortez's medical kites.

The Court accordingly accepts and adopts Judge Baldwin's recommendations as to the deliberate indifference to serious medical needs claim. Defendants' motion for summary judgment on this claim is granted.

**2. Excessive Force**

Judge Baldwin recommends denying summary judgment to both parties on Cortez's excessive force claim, because there is a genuine dispute of material fact regarding whether Defendants used reasonable force to subdue an aggressive inmate or acted in a malicious and sadistic manner to punish Cortez for allegedly assaulting an officer at Warm Springs Correctional Center. (ECF No. 131 at 15–16.) Defendants object, claiming that Cortez's declaration is not sufficient to raise a genuine dispute of material fact as to excessive force. (ECF No. 132 at 5–10.)

Cortez's excessive force claim is brought under the Eighth Amendment since the alleged incidents occurred in the prison context. *Hughes v. Rodriguez*, 31 F.4th 1211, 1220 (9th Cir. 2022). In excessive force cases brought under the Eighth Amendment, the relevant inquiry is "whether force was applied in a good-

faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 1221 (citation and quotations omitted). The Ninth Circuit applies a five-factor test to determine whether the use of force was malicious and sadistic: "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of the forceful response." *Id.* (citation and quotations omitted). Although the extent of any injuries suffered is relevant, a showing of a significant injury is not required for an excessive force claim under the Eighth Amendment. *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

Excessive force cases "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom," and for this reason the Ninth Circuit has "held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Lolli v. Cnty. of Orange*, 351 F.3d 410, 415–16 (9th Cir. 2003) (citation and quotations omitted); *Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 n. 10 (9th Cir. 1997) (collecting cases).

Defendants essentially contend that faced with contemporaneously prepared incident reports, medical evidence, and the use-of-force documentation they advance in support of their argument, Cortez's declaration fails to satisfy his burden to create a genuine dispute of material facts. (ECF No. 132 at 5–10; 11–16.) Instead, they argue, Cortez's declaration, which sets forth his version of the incident, only restates the allegations in his First Amended Complaint. (*Id.*) The Court disagrees.

First, Cortez's sworn declaration squarely fits within the materials that a party can support their arguments with to defeat summary judgment. *See* Fed. R. Civ. P. 56(c)(1)(A) (identifying "affidavits and declarations" as materials that a party can use to support their argument at the summary judgment stage). The

Court will not discount this proper evidence merely because Cortez recounts his version of the incident both in it and his First Amended Complaint.

Second, Cortez's version of events is not contradicted by Defendants' evidence, as they argue. (ECF No. 132 at 12–13.) Defendants' evidence supports their version of events—that they used reasonable force to subdue Cortez after he became aggressive—but Defendants' own incident reports, which they primarily rely on, do not conclusively establish that their version of events is the truth. (*See e.g.* ECF Nos. 66-4 at 2–4; 66-5.) In support, they chiefly rely on *Scott v. Harris*, in which the Supreme Court held when "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." 550 U.S. 372, 380 (2007). That case involved dash-camera footage of a high-speed pursuit, that "utterly discredited" the suspect's version of events to the point that "no reasonable jury could have believed him." *Id.* at 380. In contrast, Defendants' evidence, while sufficiently supporting their initial burden at summary judgment, does not utterly discredit Cortez's declaration.

Thus, because the Court, in deciding whether to grant Defendants' motion for summary judgment, must view the evidence in the light most favorable to Cortez, it finds that there is a genuine dispute of material fact as to whether Defendants acted in a malicious and sadistic manner or whether they reasonably used force to subdue an aggressive inmate. Cortez alleges that Defendants singled him out and assaulted him after a strip search to enact revenge for his alleged assault of an officer at Warm Springs Correctional Center. If a jury found his version of events credible, it would reasonably conclude that Defendants violated the Eighth Amendment by maliciously and sadistically using force to harm Cortez.

Similarly, in deciding whether to grant Cortez's motion for summary

judgment, the Court weighs the evidence in the light most favorable to the non-moving party, Defendants, and finds that a jury could find that Defendants used reasonable force to subdue an aggressive inmate.

The Court therefore agrees with the R&R and denies both parties' motions for summary judgment on Cortez's excessive force claim.

**3. Retaliation**

Wieland and Stubbs argue that they are entitled to summary judgment on Cortez's retaliation claim because they were not aware that Cortez engaged in protected conduct, therefore, they could not have retaliated. (ECF No. 114 at 7–11.) Judge Baldwin agreed with Wieland and Stubbs, finding that Cortez adduced no evidence indicating that they were actually aware that he engaged in protected conduct. (ECF No. 131 at 16–17.) Cortez did not object to this recommendation and the Court finds that Judge Baldwin did not clearly err. (*See* ECF No. 133.)

When prison administrators retaliate against inmates for exercising their right to file grievances, they violate the First Amendment. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004). For a retaliation claim to survive summary judgment, the plaintiff must show sufficient evidence that (1) a state actor took some adverse action against the inmate (2) because of (3) the inmate's protected conduct, and the action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Id.* at 567–68.

In his amended complaint, Cortez alleges that he contacted a "lawyer named Adam Breeden," and a non-profit called Return Strong reached out to the prison "requesting answers and video footage of 1-30-21 the day of the ambush and assault." (ECF No. 33 at 10.) There are no dates indicating when these events occurred, therefore, there is no evidence that Weiland and Stubbs have any knowledge that Cortez engaged in protect conduct. (*See id.*) The burden thus shifts to Cortez to adduce evidence demonstrating a genuine dispute of material

fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

In response, Cortez contends that he contacted the lawyer "that same morning" and because Weiland and Stubbs "were in constant proximity" to him a reasonable jury could conclude they heard the call and wrote him up as a result. (ECF No. 123 at 15.) For support, Cortez cites his own declaration, which contains no mention of any lawyer, nonprofit, or retaliation. (ECF No. 119 at 64–66.) Cortez, accordingly, fails to adduce evidence that Weiland and Stubbs were actually aware that he engaged in protected conduct, he fails to carry his burden at summary judgment. *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995). The Court thus adopts Judge Baldwin's recommendation, and grants Defendants' motion for summary judgment on this claim.

**4. Qualified Immunity**

Judge Baldwin recommended denying Defendants' qualifying immunity on Cortez's only remaining claim, excessive force, because it was clearly established in January 2021 that assaulting a compliant inmate, or failing to intercede in the face of such an assault, violated the Eighth Amendment. (ECF No. 131 at 19–20.) Defendants object, arguing that Judge Baldwin identified the right at too high of a level of generality. (ECF No. 132 at 16–17.)

Qualified immunity is not merely an immunity from liability, but also an immunity from suit. *Hunter v. Bryant*, 502 U.S. 224, 227-28 (1991); *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 70 F.3d 1095, 1098–99 (9th Cir. 1995). The doctrine of qualified immunity balances two important interests: "the need to hold public officials accountable when they exercise power irresponsibly" against "the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The qualified immunity defense allows for mistaken judgments and protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* In so doing, it protects public officials "'from undue interference with their duties and

from potentially disabling threats of liability.'" *Elder v. Holloway*, 510 U.S. 510, 514 (1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)).

The Supreme Court has set forth a two-part analysis for resolving government officials' qualified immunity claims. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Under the *Saucier* analysis, "[q]ualified immunity protects government officials from liability under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Cuevas v. City of Tulare*, 107 F.4th 894, 898 (9th Cir. 2024) (internal quotation marks and citations omitted).

In step one, the court considers whether the facts "[t]aken in the light most favorable to the party asserting the injury … show [that] the [defendant's] conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201. As previously discussed, the facts viewed in the light most favorable to Cortez clearly give rise to an Eighth Amendment violation.

In step two, the court determines whether the right was clearly established at the time of the alleged violation. *Id.* The second step of the analysis is meant to encourage officers not "err always on the side of caution because they fear being sued." *Hunter*, 502 U.S. at 229 (internal quotations and citations omitted).

A right is clearly established if, at the time of the challenged conduct, "every reasonable official would have understood that what he [was] doing violate[d] that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citations and quotations omitted). Whether a right is clearly established for the purposes of qualified immunity "depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The right must not be stated as a broad general proposition, but rather must be defined with enough specificity to put a reasonable officer on notice that his conduct is unlawful. *Reichle v. Howards*, 566 U.S. 658, 664 (2012). Officers can be on notice that their conduct is unlawful even in novel factual

circumstances where their specific actions egregiously or obviously violates the general rule. *See Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1073 (9th Cir. 2012); *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). But "the farther afield existing precedent lies from the case under review, the more likely it will be that the officials' acts will fall within that vast zone of conduct that is perhaps regrettable but is at least arguably constitutional." *Hamby v. Hammond*, 821 F.3d 1085, 1095 (9th Cir. 2016).

While Defendants argue that Judge Baldwin defined the right at too high of level of generality, their argument essentially relitigates their excessive force arguments that Cortez initiated the altercation. (ECF No. 132 at 16–17.) The Court, however, as stated above, found that Defendants violated Cortez's Eighth Amendment right. Additionally, it is clearly established that wantonly assaulting a compliant inmate violates the Eighth Amendment. *See, e.g., Martinez v. Stanford*, 323 F.3d 1178, 1180, 1184 (9th Cir. 2003) (reversing grant of qualified immunity where correctional officers were alleged to have assaulted and tazed a compliant inmate); *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986) (finding that inmate's allegations of being "assaulted during a controlled strip search," if proven, would establish a violation of the Eighth Amendment).

It is also "clearly established" that failing to intervene in the face of an assault violates the Eighth Amendment. The Ninth Circuit has specifically noted that there is a "long line of civil cases" establishing that "police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *United States v. Koon*, 34 F.3d 1416, 1447 n.25 (1994), *rev'd on other grounds*, 518 U.S. 81 (1996); *see also Cunningham v. Gates*, 229 F.3d 1271, 1289–90 (2000).

Defendants, therefore, were on notice that assaulting Cortez when he was compliant during a strip search, or failing to intervene during such an assault, was a violation of Cortez's Eighth Amendment rights. Accordingly, Defendants

are not entitled to qualified immunity, and Cortez's motion for summary judgment on Defendants' affirmative defense of qualified immunity is moot.

**B. Affirmative Defenses**

Judge Baldwin concluded that Defendants' affirmative defenses should not be struck because good faith goes to the merits of Cortez's excessive force claim, and the record regarding administrative exhaustion is undeveloped. (ECF No. 131 at 20–21.) Cortez did not object to this recommendation and the Court finds that Judge Baldwin did not clearly err. (*See* ECF No. 133.)

Defendants' good faith affirmative defense is clearly integral to its defense of Cortez's excessive force claim, namely that they used force against Cortez in a reasonable manner to gain compliance. (*See e.g.* ECF No. 114 at 12–16.) Thus, because this affirmative defense goes to the merits of Cortez's excessive force claim, the Court finds that it would be inappropriate to strike and denies Cortez's motion on this affirmative defense.

Regarding Defendants' affirmative defense that Cortez failed to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA"), the Court finds that both parties have failed to show they are entitled to summary judgment on this defense. Defendants did not initially move for summary judgment on this ground, which they raised for the first time in their response to Cortez's motion. (ECF No. 122 at 10–12.) However, Defendants' response failed to support their argument by providing Cortez's grievance record, or any other evidence. (*See id.*) The Court thus ordered supplemental briefing and ordered Defendants to file the opening brief. (ECF No. 126.) Defendants, however, failed to file their brief as ordered. The Court eventually ordered Defendants' untimely brief struck because their misreading of the Court's order did not amount to excusable neglect. (ECF No. 130.) Defendants did not seek reconsideration or appeal that order. Cortez also failed to submit any evidence, such as grievance record, to support his own argument that he properly exhausted, and instead

relies on medical kites he submitted as evidence that he put ESP on notice of his complaint. (ECF No. 119 at 22–24.) As a result, the Court denies summary judgment on Defendants' affirmative defense that Cortez failed to exhaust administrative remedies as required by the PLRA. *See Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) ("If a motion for summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge").

## III. CONCLUSION

IT IS THEREFORE ORDERED that the report and recommendation (ECF No. 131) is ADOPTED.

IT IS FURTHER ORDERED that Defendants' motion for summary judgment (ECF No. 114) is GRANTED in part and DENIED in part. Defendants' motion is granted as to Cortez's deliberate indifference to serious medical need and retaliation claims, and denied as to Cortez's excessive force claim.

IT IS FURTHER ORDERED that Cortez's motion for summary judgment and motion to strike affirmative defenses (ECF Nos. 115; 119) are DENIED.

Dated this 28th day of July 2026.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE